Amos D. CARVER and Joseph B. MORRELL, copartners doing business under the firm name and style of Baker, Carver & Morrell, v. UNITED STATES OF AMERICA, owner of the steamships CLIO, MOOSCABEE, FORT LOGAN, and MORGANZA, Respondent-Appellant, and Thomas J. Higgins, Receiver of State Steamship Corporation, an alleged bankrupt, impleaded. (Circuit Court of Appeals, Second Circuit. May 18, 1922.) No. 311. Appeal from the District Court of the United States for the Southern District of New York. William Hayward, U. S. Atty., of New York City (Arthur M. Boal, of Boston, Mass., and Norman B. Beecher, of New York City, of counsel), for the United States. Crowell & Rouse, of New York City, for appellees. Before ROGERS, HOUGH, and MANTON, Circuit Judges.

PER CURIAM. This cause came here by appeal from a final decree in Admiralty entered in the District Court for the Southern District of New York. Facts as found by this court are as follows:

At all the times hereinafter mentioned the steamships Clio and Morganza belonged to the United States, but were in the possession of State Steamship Corporation, a company of the state of Delaware, as charterer. Libelants are copartners, engaged in shipchandlery, and were, in respect of all transactions giving rise to this litigation, represented solely by one Cunningham, a salesman of theirs. Cunningham sold many articles, of the kind known as "supplies" or "necessaries" in maritime law, to State Steamship Corporation. He dealt with one Prosser who was "marine superintendent" or "port captain" for said corporation, and as such charged with the duty of procuring supplies for such vessels as it operated, including Clio and Morganza. In the spring of 1920, and not later than April 20, libelants, as the result of orders obtained as above, delivered to and aboard of Clio certain supplies, and rendered bills for same made out to "S. S. Clio and owners, State S. S. Corp." Down to the completion of deliveries to Clio, there is no evidence that libelants or Cunningham knew of any charter by the United States to State Corporation, or knew any fact tending to show that said corporation did not own Clio. That vessel was in fact operated by State Steamship Corporation under a charter mutatis mutandis like that of Morganza, infra.

In August, 1920, Cunningham went to Washington, D. C., on business which brought him before the United States Shipping Board, or representatives thereof. While in Washington, or shortly before going, he learned that Clio and Morganza were in State Corporation's possession under what he described as "partial payment purchases." He never made any inquiry to discover what that phrase meant, although it was easy so to do. If he had asked, he would have learned in Washington, and at once, that Morganza had (on December 8, 1919) been chartered to State Corporation by the owners for one year, hire payable monthly in advance, and that said charter contained the following agreement: "The charterers shall, at their sole expense, man, operate, victual and supply said vessel; the master and chief engineer, however, to be subject to the approval of the owner. The charterers shall pay all port charges, pilotages, and all other costs and expenses incident to the use and operation of said vessel. * * * The charterers will not suffer nor permit to be

continued any lien, incumbrance, or charge which has or might have priority over the title and interest of the owner in said vessel; but the charterers will in due course, and in any event within 15 days after the same becomes due and payable, pay, discharge, or make adequate provision for the satisfaction or discharge, of every lawful claim or demand which, if unpaid, might, in equity, in admiralty, at law, or by any statute of this or any other nation where said vessel may be navigating or berthed, have priority over the said title and interest, or might operate as a lien, incumbrance, or charge upon said vessel, or cause its detention in port, or will cause said vessel to be released or discharged from any such lien, incumbrance, or charge in any event within 15 days after such lien, incumbrance, or charge is imposed upon said vessel. * * * In general, the charterers shall operate the said vessel free of any expense to the owner of any nature or kind whatsoever." He would further have learned of the following charter clause, which is the sole reason furnished by said document or any other evidence for the phrase "partial payment purchase": "If the charterers shall have duly paid all the charter hire and shall not then be in default in respect of any of the terms, covenants, or conditions of this charter party, then at the expiration of one year from the date of the delivery of said vessel the charterers shall have the option to purchase said vessel at the cash price of $103 per deadweight ton on the basis of the deadweight tonnage as stated in the caption hereof, hire theretofore paid to be applied on said purchase price. The exercise of said option shall be simultaneous with the termination of this charter party, and the charterers shall give 10 days' notice (in writing) of intention to exercise same."

We find that Cunningham was in August, 1920, well aware of facts and circumstances putting him and his employers and principals on inquiry, and made no inquiry, but preferred or chose to avoid the same. On returning to New York Cunningham sold through Prosser as before, and delivered to and on board Morganza certain other "supplies," and bills for same were rendered to "S. S. Morganza and owners, State S. S. Corp." Such delivery was complete, and bills rendered by September 30, 1920. Neither the captain nor any other officer of either Clio or Morganza had anything to do with the matters hereinabove detailed. On October 7, 1920, an involuntary petition in bankruptcy was filed against State Steamship Corporation; it has since been adjudicated, and is insolvent.

On October 15, 1920, the libel herein was filed, asserting that for the agreed price of said supplies libelants had, or would have had if the steamers had been privately owned, maritime liens against Clio and Morganza respectively, the amount of each lien being the price of what went aboard one vessel, and further alleging liability in respect of both demands on the part of the United States. The liability of State Steamship Corporation in personam and in admiralty for said supplies was and is clearly proved. The liability of the vessels is asserted under the "Act relating to liens on vessels," etc., approved June 23, 1910 (Comp. St. §§ 7783–7787), and "the Merchant Marine Act, 1920," approved June 5, 1920, and that of the United States under the "Act authorizing suits against the United States in admiralty, etc.," approved March 9, 1920. The District Court granted decree for the agreed prices of said supplies, etc., against the United States, with right of recovery over (after payment) from the estate in bankruptcy of State Steamship Corporation. Whereupon the United States appealed.

## Questions Certified.

Under the statutes enumerated, or any of them:

(1) Would a maritime lien for necessaries or supplies have arisen as against Clio, had that vessel been privately owned?

(2) Would a maritime lien for necessaries or supplies have arisen as against Morganza, had that vessel been privately owned?

If either or both of the foregoing questions are answered in the affirmative:

(3) Is the United States liable for the amount of what would have been a lien, had the vessel affected been privately owned?

If either or both of questions 1 and 2 are answered in the negative:

(4) Is the United States liable for the personal indebtedness of State Steamship Corporation, in respect of supplies and necessaries furnished to a vessel, in respect of which no maritime lien would have arisen, had such vessel been privately owned?